UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20560-RAR

**LEON BATTLE**,

    Plaintiff,

v.

**KENDALL REGIONAL MEDICAL CENTER**, *et al.*,

    Defendants.
_____/

## ORDER TO AMEND

**THIS CAUSE** comes before the Court on Plaintiff's three *pro se* civil rights Complaints filed under 42 U.S.C. § 1983. *See* Kendall Regional Complaint ("Kendall Compl."), [ECF No. 1]; Florida Department of Corrections Complaint ("FDOC Compl."), [ECF No. 4]; Centurion Complaint ("Centurion Compl."), [ECF No. 5]. All three complaints were transferred to the undersigned and then consolidated into one case after the Court determined each action involved "common questions of law or fact." Order Consolidating Cases, [ECF No. 3], at 1. Specifically, the Court found that each Complaint "accuse[d] different Defendants of violating Plaintiff's constitutional rights" in connection with a February 7, 2020 incident where another inmate attacked Plaintiff while they were both incarcerated at the South Florida Reception Center. *See id.*

After reviewing Plaintiff's Complaints in tandem, the Court finds that all three Complaints are impermissible shotgun pleadings, and that Plaintiff has failed to state a claim against any of the Defendants. Nevertheless, the Court will provide Plaintiff with an opportunity to remedy these issues by filing one, unified amended complaint.

## **LEGAL STANDARD**

The Court must hold the allegations in a *pro se* civil rights complaint to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998). However, despite the liberal construction afforded to *pro se* filings, *pro se* litigants are required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (concluding that a *pro se* litigant is subject to a court's rules and to the Federal Rules of Civil Procedure); *McLeod v. Sec'y, Fla. Dep't of Corr.*, 679 F. App'x 840, 843 (11th Cir. 2017) (affirming dismissal of *pro se* litigant's noncompliance with court orders); *see also* S.D. FLA. L.R. 1.1 (explaining the Local Rules apply in all proceedings unless otherwise indicated and that the word "counsel" shall apply to a party that is proceeding *pro se*).

The Federal Rules of Civil Procedure provide, in pertinent part, that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In addition, Plaintiffs must specify all the grounds for relief available to the moving party, state the facts supporting each ground for relief, and be signed under penalty of perjury by Plaintiff or by a person authorized to sign on behalf of Plaintiff. *See id.* "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b).

Likewise, the Federal Rules of Civil Procedure do not authorize *pro se* litigants to file impermissible "shotgun" pleadings. The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citations omitted). "The most common" shotgun pleading is one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. "The next most common type . . . is a complaint that [is] . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. "The third type of shotgun pleading is one that . . . [does] not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–1323. Lastly, "there is the relatively rare [shotgun pleading] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who

is immune from such relief." *Id.* § 1915A(b).  Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

If a plaintiff fails to set forth a legally sufficient claim for relief, either because the complaint lacks sufficient factual support or because the complaint fails to comport with the appropriate procedural rules, its usefulness is substantially diminished.  Still, a *pro se* litigant must generally "be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).  "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

Each of Plaintiff's three Complaints names a "category" of Defendants and alleges that each category violated Plaintiff's constitutional rights in different ways. In the Kendall Complaint, Plaintiff names the Kendall Regional Medical Center and fifteen different doctors employed at the medical center and accuses them of being "reckless, callous, [and] deliberately indifferent" when they "fail[ed] to provide follow-up medical care and treatment." Kendall Compl. at 2–4, 6. In the FDOC Complaint, Plaintiff names Ricky D. Dixon, the Secretary of the Florida Department of Corrections, and three correctional officers employed at the South Florida Reception Center and claims that they were "derelict in their job duties." FDOC Compl. at 2–3, 5. Finally, in the Centurion Complaint, Plaintiff avers that Centurion of Florida, LLC, and seven of the doctors and nurses it employs "fail[ed] to provide adequate medical care and timely medical treatment." Centurion Compl. at 2–4, 6. For reasons the Court will soon explain, all of these Complaints are not properly pled and fail to state a claim against any of this wide class of Defendants. Nevertheless, the Court will provide Plaintiff with an opportunity to amend since these deficiencies are, at least in theory, remediable. *See Woldeab*, 885 F.3d at 1291.

### A. The Complaints are Shotgun Pleadings

To begin, the Complaints do not comply with the Federal Rules of Civil Procedure and are quintessential "shotgun pleadings." Specifically, the Complaints fall into the second and fourth categories of shotgun pleadings because they are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and attempt to assert "multiple claims against multiple defendants without specifying which of the defendant are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322–23.

To illustrate, Plaintiff never alleges how each of the individual Defendants wronged him. In fact, the Court can only discern four salient facts from the Complaints: (1) Plaintiff was attacked by another inmate on February 7, 2020; (2) Plaintiff learned in May 2023 that this attack left him with "nerve damage in the back of my head"; (3) "medical staff" did not acknowledge Plaintiff's "medical need" until April 2023; and (4) each of the twenty-eight Defendants named across all three Complaints were "reckless," "deliberately indifferent," "callous," "malicious," and acted in bad faith towards Plaintiff. *See* Kendall Compl. at 6; FDOC Compl. at 5; Centurion Compl. at 6. These vague and conclusory statements do not explain to the Court how each of the Defendants acted in a reckless, indifferent, callous, or malicious way towards Plaintiff, nor could any of these threadbare allegations give Defendants "adequate notice of the claims against them[.]" *Weiland*, 792 F.3d at 1323. To borrow a phrase from the Supreme Court's decision in *Iqbal*, the Complaints are comprised of nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." 556 U.S. at 678.

To resolve this issue, Plaintiff will be allowed to file an amended complaint that contains all of his claims against all of the Defendants. However, this amended complaint must comply with certain rules. The amended complaint must be made up of "short and plain statements of the claim showing that the pleader is entitled to relief"—in other words, Plaintiff must explain, in short and plain statements, how each individual Plaintiff wronged him and how those wrongs amount to a constitutional violation. FED. R. CIV. P. 8(a)(2); *see also Twombly*, 550 U.S. at 556 ("[W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to [show Plaintiff is entitled to relief]."). Each of Plaintiff's claims must also be presented in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). The Court will dismiss any amended complaint that does not comply with these rules and/or

does not provide the Court and Defendants with adequate notice of how Defendants allegedly violated Plaintiff's constitutional rights.

### B. The Kendall Regional Defendants

The first set of Defendants is the Kendall Regional Medical Center and fifteen doctors that are employed there. The sole allegation against these doctors is that they were deliberately indifferent to the Plaintiff's medical needs when they failed "to provide follow-up medical care and treatment." Kendall Compl. at 6. To prove that a defendant violated the Eighth Amendment by being deliberately indifferent to an inmate's serious medical needs, the plaintiff must show that he "had a serious medical need," that the defendant "acted with deliberate indifference to [that] serious medical need," and that his injury "was caused by the defendant's wrongful conduct." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). A defendant acts with deliberate indifference if he had "subjective knowledge of a risk of serious harm" and then disregarded that risk "by conduct that is more than gross negligence." *Id.* at 1327 (cleaned up).

Although the Court accepts that Plaintiff has shown that his "nerve damage" constitutes a serious medical need, he has not shown that any of the Kendall Regional Defendants were deliberately indifferent to this need or that their deliberate indifference caused his injuries. There are no allegations that any of the doctors had "subjective knowledge" of Plaintiff's nerve damage nor does Plaintiff show how any of the doctors "disregarded" that risk. *See id.* Since there are essentially no facts alleged against the hospital and its doctors, Plaintiff has failed to state a deliberate indifference claim.

The Court will also address one other issue involving the Kendall Regional Defendants. In general, private individuals (such as doctors employed by a private hospital) cannot be sued under § 1983 since they are not state actors. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50

(1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982))). But "a private physician who is under contract with a state to provide medical care to inmates acts 'under color of state law for purposes of section 1983 when undertaking duties' to treat an inmate." *Carswell v. Bay Cnty.*, 854 F.2d 454, 456 (11th Cir. 1988) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).

This case concerns a slightly different question: Does a private physician who treats an inmate <u>without</u> being under contract with the state act under color of state law? The answer is unclear since "neither the Eleventh Circuit nor the United States Supreme Court has directly addressed the precise nature of [this] relationship." *Dixon v. Baptist S. Med. Hosp.*, No. 07-CV-662, 2010 WL 431186, at *6 (M.D. Ala. Feb. 1, 2010). Federal courts reaching this question have come to widely different conclusions. *See id.* at *7 (discussing the "split in authority on the issue whether a private physician who treats a prisoner must be under contract with the state prison system or its medical care provider to be deemed a state actor for purposes of § 1983"). The Court notes, however, that there are three published circuit court opinions holding that private doctors who provide medical treatment to inmates <u>are</u> state actors under § 1983. *See Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994) ("Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician."); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 831–32 (7th Cir. 2009) (holding the staff of a private hospital was liable under § 1983 since the plaintiff's "treatment at Waupun Memorial was tied to the state's responsibility for his overall medical care"); *Robertson*

*v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 935 (8th Cir. 2022) (adopting the analysis in *Conner*). The Court will not come down one way or another on this issue yet, but it advises Plaintiff that he should also clarify Kendall Regional's relationship with the Florida Department of Corrections so that the Court can more easily determine if its doctors acted "under color of state law" when they treated Plaintiff.

### C. The FDOC Defendants

The next group of Defendants are employees of the Florida Department of Corrections ("FDOC"). Plaintiff avers that three of the correctional officers were "willful[ly] derelict in their job duties" and that Secretary Dixon is "vicariously liable" for this "outrageous conduct." FDOC Compl. at 5. Although the Court gathers that Plaintiff is accusing the FDOC Defendants of being "deliberately indifferent," that is all the Court can discern. Plaintiff does not explain how the FDOC Defendants were "derelict" in their duties, so it is impossible to know, for instance, whether Plaintiff takes issue with their failure to protect Plaintiff from the inmate who attacked him, their failure to provide adequate medical treatment after the attack, or both. As the Court explained with the Kendall Regional Defendants, Plaintiff must show how the FDOC Defendants "subjectively knew that the prisoner faced a substantial risk of serious harm and that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (cleaned up). Plaintiff has done none of this, so he has failed to state a claim.

There are also additional issues with two of the FDOC Defendants: Secretary Dixon and "Captain Jane Doe." First, Secretary Dixon is "not liable under § 1983 for the unconstitutional acts of [his] subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). So, to establish that Secretary Dixon is liable,

Plaintiff must show either that he "personally participate[d] in the alleged unconstitutional conduct or [that] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).[1] Captain Jane Doe is also an improper defendant because "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Even if Plaintiff does not know Captain Jane Doe's identity he must still provide "a description of the defendant [that] is so specific as to be 'at the very worst surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). Plaintiff has failed to provide any identifying information about Captain Jane Doe except her rank, her gender, and where she was employed. *See* FDOC Compl. at 3. Since there are undoubtedly many female captains employed by FDOC, Plaintiff must provide more information so that this specific Defendant can be identified. *See Richardson*, 598 F.3d at 738.

### D. The Centurion Defendants

The final group of Defendants is Centurion of Florida, LLC, and seven of the doctors and nurses it employs. Since Centurion "contracted with the FDOC to provide medical services to inmates within the state of Florida," it (along with its employees) can be sued under § 1983 since it is performing a function that "is traditionally [within] the exclusive prerogative of the state." *Gregory v. Perez-Lugo*, No. 19-CV-415, 2019 WL 1931919, at *2 (M.D. Fla. Apr. 30, 2019) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). Just like the Kendall Regional Defendants, Plaintiff claims the Centurion Defendants exhibited deliberate

---

[1] A "causal connection" between a supervisor and a constitutional violation can be shown in one of three ways: (1) there is "a history of widespread abuse [that] puts the reasonable supervisor on notice . . . and he fails to [act]"; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or (3) the supervisor failed to "adequately train" his subordinates. *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (cleaned up). The Court warns Plaintiff, however, that he cannot allege the existence of "widespread abuse" or an unconstitutional "custom or policy" based on a "single incident." *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

indifference to his serious medical needs by "failing to provide adequate medical care and timely medical treatment." Centurion Compl. at 6. And, just like the Kendall Regional Defendants, Plaintiff has not stated a deliberate indifference to serious medical needs claim against any of the Centurion Defendants. Plaintiff has alleged no facts indicating that the Defendants had subjective knowledge of his serious medical needs, that they disregarded his needs, or that their deliberate indifference caused Plaintiff to be injured. *See Goebert*, 510 F.3d at 1326–27.

Plaintiff must also show more if he wants to sue Centurion. When a private entity like Centurion "provide[s] medical services to inmates," it "becomes the functional equivalent of a municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). Thus, to be liable under § 1983, Plaintiff must show that Centurion employs an unconstitutional "policy or custom" that caused his constitutional injury. *See id.* at 452–53. If Plaintiff cannot do so, then he cannot advance a claim against Centurion.

### E. Plaintiff Must Pay the Filing Fee

Civil suits are not free. If Plaintiff wants to maintain this action in federal court, he must pay the mandatory $405.00 filing fee—which includes both the $350.00 filing fee set by Congress and an additional $55.00 administrative fee imposed by this District. *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $350[.]"); *see also Court Fees*, UNITED STATES DIST. CT. S. DIST. OF FLA., https://www.flsd.uscourts.gov/court-fees (last visited Feb. 16, 2024). A prisoner that is "unable to pay such [filing] fees or give security therefor" may instead file a motion to proceed *in forma pauperis* ("IFP") that contains "an affidavit that includes a statement of all assets such prisoner possesses" and "a certified copy of the trust fund account statement (or institutional equivalent) for the prison for the 6-month period immediately preceding the filing of

the complaint." 28 U.S.C. § 1915(a)(1)–(2). Plaintiff must either pay the $405.00 filing fee or file a legally sufficient IFP motion that is accompanied by his six-month prison account statement. Failure to do so <u>will</u> result in this case being dismissed for failure to prosecute and failure to comply with this Order. *See* FED. R. CIV. P. 41(b).

## **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Consistent with the purpose of FED. R. CIV. P. 8, Plaintiff is granted leave to file an amended complaint **not to exceed twenty (20) pages** in length. Moreover, the Court encourages Plaintiff to make every effort to keep his allegations within the four corners of the form complaint and to keep attached additional pages at a minimum so that they can better adhere to the page limitations set by this Order.

2. On or before **March 22, 2024**, the amended complaint must be docketed, signed under the penalty of perjury, and contain a short and plain statement of a claim for relief, a basis for federal jurisdiction, and a demand for judgment. Plaintiff shall be provided a form complaint.

3. The amended complaint must be labeled "Amended Complaint" and must show the case number referenced above, so that it will be filed in this case.

4. The amended complaint must contain a separate paragraph as to each Defendant explaining what that particular Defendant did and the supporting facts to show why that person is being sued.

5. Plaintiff is reminded that the amended complaint should, at the very least, cure the deficiencies identified within this Order to state a claim for relief.

6. On or before **March 22, 2024**, Plaintiff must either pay the $405.00 filing fee or file a legally sufficient IFP motion that contains "an affidavit that includes a statement of all assets

such prisoner possesses" and "a certified copy of the trust fund account statement (or institutional equivalent) for the prison for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1)–(2). A copy of a court-approved IFP motion will be attached to this Order.

7. Plaintiff is warned that failure to file the amended complaint and pay the filing fee or file an IFP Motion on time and in compliance with this Court's Orders shall result in dismissal of this case for failure to prosecute or failure to comply with court orders. *See* FED. R. CIV. P. 41(b).

8. The Clerk's Office is instructed to administratively **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 20th day of February, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**